# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

KEITH PAUL BIRD,                                      Case No. 2:21-cv-00108-APG-DJA

                     Plaintiff              **SCREENING ORDER**

     v.

DIRECTOR DANIELS, et al.,

                   Defendants

Plaintiff Keith Paul Bird, who is currently in the custody of the Nevada Department of Corrections (NDOC), has submitted two copies of a civil rights complaint under 42 U.S.C. § 1983. ECF Nos. 6, 11. The two copies appear to be identical, and I accept the most recently filed copy (ECF No. 11) as the operative complaint in this case. Bird has filed an application to proceed *in forma pauperis*. ECF No. 10. I defer a decision on the application to proceed *in forma pauperis*. Bird has also filed numerous motions for a preliminary injunction or temporary restraining order. ECF Nos. 4, 5, 8, 9, 15, 16. This order screens Bird's complaint and addresses his motions.

## I.      SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two

essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, the Prison Litigation Reform Act (PLRA) requires a federal court to dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).  Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint.  When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for failure to state a claim is proper only if it is clear the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).  In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).  Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  While the standard under Rule 12(b)(6) does not require detailed factual allegations,

a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

A reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.*  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

All or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact.  This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.    SCREENING OF COMPLAINT

Bird sues multiple defendants for events that took place while he was incarcerated at High Desert State Prison (HDSP). ECF No. 11 at 1.  He sues Director Daniels, Harold Wickham, Calvin Johnson, Jeremy Bean, Monique Hubbard-Pickett, G. Piccinini, Sgt Ontiveras, Brightweil, Barth, Willie Clayton, Fontes, Corey, Ariel Ortiz, Sgt. Ashcraft, S. Barrett, Prentice, Norrham, Greg Bryan, Michael Minev, Flynn, Simpson, Alvarez, B. Guiterrez, J. Cabrera, G.

1  Martin, and J. Corruledo.  Bird asserts eight counts and seeks injunctive, declaratory, and

2  monetary relief.

3         The complaint alleges the following:[1] On March 3, 2020, Bird informed defendants

4  Monique-Hubbard Pickett and Jeremy Bean that inmates were not receiving any cleaning

5  supplies.  From December 7, 2018, until the filing of the complaint (which is dated January 29,

6  2021), Bird had to clean his cell with nothing but water.  Bird also had to use showers that were

7  used by 55 other inmates.  This exposed Bird to pathogens, such as COVID-19.

8         In May 2020, Bird filed informal grievances over this issue, but Hubbard-Pickett and

9  Piccinini denied his grievances.  Bird also asked unit officers Clayton, Fontes, Corey, Ortiz,

10  Ashcraft, Brightwell, Flynn, Simpson, and Alverez for cleaning supplies, but none of them

11  provided him any supplies.  Bird requested access to the janitor's closet, but defendants Clayton,

12  Fontes, Corey, Ortiz, Brightwell, Ashcraft, Flynn, Simpson, Alverez, Barth, Bean, Hubbard-

13  Pickett, and Johnson refused Bird's requests.

14         On December 29, 2020, Bird tested positive for COVID-19.  Despite this positive test,

15  Clayton and Corruledo ordered Bird to work in the prison industries hanger room with at least 50

16  other inmates and one correctional officer.  On January 5, 2021, Bird was denied transport to

17  court due to his previous positive COVID-19 test.  This was the first time that staff informed

18  Bird that he had tested positive for COVID-19.  Defendant Prentice, a caseworker, was informed

19  on December 29, 2020 that 15 inmates in unit 9D had tested positive for COVID-19, but he did

20  not take any steps to ensure that they were quarantined.  The failure to quarantine Bird led to

21  other inmates becoming infected.

22

23         [1] Most of the allegations in the complaint are contained in Count I and then incorporated
       into Counts II-VII. ECF No. 11 at 9-26.  I will summarize the allegations in Count I and then add
       any relevant details from Bird's other counts when analyzing his claims.

1    Bird suffered from a variety of symptoms, including vomiting, fever, body aches,

2  diarrhea, and breathing issues.  Bird filed two emergency grievances requesting medical

3  treatment.  Lopez and Ortiz each signed one of the grievances, but Bird did not receive any

4  treatment.  On January 7, 2021, Barrett came to Bird's cell to confirm that he had tested positive

5  and told him that medical would come by the unit the next day, but medical did not come.  As of

6  the filing of the complaint, Bird was suffering from "long haul symptoms," such as brain fog,

7  headaches, shortness of breath, heart palpitations, light sensitivity, and others.

8    Staffing at HDSP medical is inadequate.  Sick call is not conducted on a daily basis, and

9  the procedures at sick call often lead to delays.  The kite system results in preliminary

10  determinations without an examination, and patients often must wait months to get access to

11  medical care.  Defendant Charles Daniels is the director of prisons, and he is responsible for the

12  oversight of the medical division.  On January 5, 2021, Bird send Daniels a request for help with

13  treatment for COVID-19, but he never received a response.

14    Wickham, the deputy director of NDOC is also responsible for overseeing the medical

15  division, and he failed to take any action to prevent the spread of COVID-19.  Bird informed

16  Calvin Johnson, the warden of HDSP, about the lack of medical care on January 9, 2021, but

17  Bird never received a response.

18    Ontiveras oversaw Bird's unit.  Although Ontiveras was informed of Bird's positive

19  COVID-19 test, he did not take any action to ensure that Bird received proper treatment.

20  Defendants Barth, Clayton, Fontes, Corey, Ortiz, Ashcraft, Flynn, Simpson, and Alverez were

21  also informed of Bird's positive test when he was denied transport to court, but none of them

22  took action to provide Bird medical care.

23    Defendants John Doe 1-10, Jane Doe 1-20, Bryan, Minev, Gutierrez, Cabrera, and Martin

1  are medical providers who have a duty of care to Bird, and they failed to ensure that Bird

2  received adequate medical care.

3        Officers are tested weekly for COVID-19, but results are only received three-to-four days

4  later.  When officers report a possible infection, they are tested, but they are still allowed to enter

5  the prison and work.  Inmates are most likely to be infected by a guard who is infected.  On

6  December 24, 2020, Fontes conducted cell searches and yelled at inmates with a properly

7  wearing his mask.

8        Based on these allegations, Bird brings an Eighth Amendment claims based on the lack

9  of sanitation (Count I), the failure to take measures to prevent the spread of COVID-19 (Count

10 V), and a "callous disregard for Bird's health and safety" (Count VIII).  I construe these counts

11 as asserting claims of deliberate indifference to unsafe prison conditions, and I will consider

12 them together.

13       Bird also brings three claims of deliberate indifference to a serious medical need under

14 the Eighth Amendment (Counts II, III, IV).[2]  These claims appear to be duplicative, and I will

15 consider them together.  Finally, Bird brings a First Amendment claim[3] based on allegations that

16

17       [2] For his Eighth Amendment claims, Bird also brings equivalent claims under the Nevada
Constitution. ECF No. 11 at 9, 19, 21, 22, 23, 26.  Article 1, Section 6, of the Nevada

18 Constitution prohibits cruel and unusual punishment.  Cruel and unusual punishment claims
under the Nevada Constitution generally follow the same standards as the United States

19 Constitution. *See, e.g., Allred v. State*, 92 P.3d 1246, 1253 (Nev. 2004); *Naovrath v. State*, 779
P.2d 944, 947 (Nev.1989).  Bird does not argue that the protections provided under the Eighth

20 Amendment and the Nevada Constitution differ.  For purposes of screening, I will assume that
the protections are the same and analyze both claims under First Amendment precedents.

21       [3] Bird also brings an equivalent claim under the Nevada Constitution. ECF No. 11 at 6.
Article 1, Section 9 of the Nevada Constitution protects freedom of speech. *See Univ. & Cmty.*

22 *Coll. Sys. of Nevada v. Nevadans for Sound Gov't*, 120 Nev. 712, 722 (2004) (noting that Article
1, Section 9 of the Nevada Constitution protects the right of the people to engage in expressive

23 activities in Nevada.)  The Supreme Court of Nevada has held that Article 1, Section 9 of the
Nevada Constitution provides no greater protection than the First Amendment. *Id.*  Bird does not
argue that the protections provided under the First Amendment and Article 1, Section 9 of the

1  his grievances have been frustrated (Count VI) and a claim of intentional infliction of emotional

2  distress (VII).

3    **A.  Deliberate Indifference to Unsafe Prison Conditions**

4    The "treatment a prisoner receives in prison and the conditions under which he is

5  confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S.

6  25, 31 (1993).  Conditions of confinement may, consistent with the Constitution, be restrictive

7  and harsh. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

8    To challenge the conditions of confinement under the Eighth Amendment, a plaintiff

9  must meet both an objective and subjective test. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir.

10  2000).  The objective prong requires a showing that the deprivation was sufficiently serious to

11  form the basis for an Eighth Amendment violation. *Id.*  "[E]xtreme deprivations are required to

12  make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

13  When determining whether the conditions of confinement meet the objective prong, the court

14  must analyze each condition to determine whether that specific condition violates the Eighth

15  Amendment. *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986).  When considering

16  the conditions of confinement, a court also should consider the amount of time to which the

17  prisoner was subjected to the condition. *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).

18  Speculative and generalized fears of harm do not rise to a sufficiently substantial risk of serious

19  harm." *Williams v. Wood*, 223 Fed. Appx. 670, 671, 2007 WL 654223, at *1 (9th Cir. 2007)

20  (holding that plaintiff failed to state an Eighth Amendment claim where he asserted that

21  defendants were deliberately indifferent his safety but did not allege that he had been assaulted

22

23
Nevada Constitution differ.  For purposes of screening, I will assume that the protections are the
same and analyze both claims under First Amendment precedents.

1    or threatened with assault).

2        As to the subjective prong of the Eighth Amendment analysis, prisoners must establish

3    prison officials' "deliberate indifference" to the unconstitutional conditions of confinement to

4    establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To

5    demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's

6    safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to

7    inmate . . . safety; the official must both be aware of facts from which the inference could be

8    drawn that a substantial risk of serious harm exists, and [the official] must also draw the

9    inference." *Id*. at 837.  Mere negligence is insufficient to show a violation of the Eighth

10    Amendment. *Id.* at 835-36.

11        Furthermore, prison officials who knew of a substantial risk to inmate health or safety

12    may be found to have violated the Eighth Amendment only if they responded unreasonably to

13    the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844; *see also Hallinan*

14    *v. Scarantino*, 466 F. Supp. 3d 587, 606 (E.D.N.C. 2020) (recognizing that the fact that actions

15    may prove inadequate to prevent the spread of COVID-19 does not establish that they were

16    deliberately indifferent).

17        Bird states a colorable claim of deliberate indifference to unsafe prison conditions.  I

18    liberally construe the complaint as alleging that, beginning in March 2020, Bird informed

19    numerous defendants, either directly or through the grievance process, that inmates were not

20    receiving any cleaning supplies to sanitize their rooms.  At this same time, COVID-19 was

21    spreading rapidly, initially through the country and eventually through the prison.  At various

22    times, Bird asked Hubbard-Pickett, Bean, Piccinini, Clayton, Fontes, Corey, Ortiz, Ashcraft,

23    Brightwell, Flynn, Simpson, Alverez, Barth, and Johnson for cleaning supplies, but they all

refused to Bird's requests.  These allegations are sufficient to state a colorable claim on screening.

In Count V, Bird further alleges that Clayton, Fontes, Corey, Ortiz, moved from cells with infected inmates to cells with uninfected inmates.  They did not change their gloves, or wear masks.  They also failed to give inmates hand sanitizer when handing out food.  I construe the complaint as alleging that these defendants deliberately failed to follow safety measures instituted by NDOC, including wearing masks and changing gloves, that were meant to decrease the chances of inmates contracting COVID-19.  The allegation that these guards deliberately failed to follow these safety protocols is sufficient to state a colorable claim on screening.

Bird also vaguely alleges that "all Defendants" named in the complaint have actively ignored measures recommended by NDOC and the CDC to slow the spread of COVID-19, and he references John and Jane Doe medical staff.  Bird does not provide any specific facts to support this broad conclusory claim about every named defendant or unnamed defendants.  As such, these vague allegations about all the defendants generally are insufficient to state a colorable claim, and I dismiss any such claim without prejudice and with leave to amend.

### B.  Deliberate Indifference to a Serious Medical Need

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate

1    indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

2          To establish the first prong, "the plaintiff must show a serious medical need by

3    demonstrating that failure to treat a prisoner's condition could result in further significant injury

4    or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.

5    2006) (internal quotations omitted).  To satisfy the deliberate indifference prong, a plaintiff must

6    show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and

7    (b) harm caused by the indifference." *Id*.  "Indifference may appear when prison officials deny,

8    delay or intentionally interfere with medical treatment, or it may be shown by the way in which

9    prison physicians provide medical care." *Id*. (internal quotations omitted).  When a prisoner

10   alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show

11   that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d

12   404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to

13   state a claim of deliberate medical indifference").  It appears that Bird is attempting to bring

14   claims against various defendants based both on their personal knowledge of his medical

15   situation and based on their roles as supervisors.

16                    **1.  Claims Based on Personal Knowledge**

17         Bird fails to state a colorable claim of deliberate indifference to a serious medical need

18   based on the defendants' personal knowledge of his medical needs.  He alleges that he tested

19   positive for COVID-19 on December 29, 2020 and that he was told for the first time on January

20   5, 2021.  He does not allege he was suffering from any symptoms at that point.  Bird vaguely

21   alleges that he suffered a range of symptoms including vomiting, diarrhea, and body aches.  But

22   he does not include any allegations about the severity of these symptoms, or when he began to

23   suffer them.  Even assuming that the allegations support that Bird had a serious medical need, he

does not allege any facts supporting that any of the defendants knew about his serious medical need and were deliberately indifferent to it.

Bird alleges that on January 5, 2021, the same day that he was told about his diagnosis, he wrote to Daniels to request medical treatment.  But this allegation does not support that Daniels was aware that Bird had a serious medical need.  Based on the allegations in the complaint, it does not appear that Bird was suffering any symptoms at that time, and Bird does not allege he told Daniels of any serious symptoms.

Similarly, Bird also alleges that he filed an emergency grievance requesting medical treatment on January 7.  Bird attached his January 7, 2021 emergency grievance to the complaint. ECF No. 11 at 89.  In that grievance, Bird states that he had tested positive for COVID-19, that he had not received any medical treatment, and that "COVID-19 kills people." *Id.*  But Bird did not state that he was suffering any symptoms.

Bird also alleges that he filed an emergency grievance on January 9, and that a variety of guards and prison officials were aware that he had tested positive for COVID-19.  But again, Bird does not allege that anyone knew that he was suffering from any COVID-19 symptoms.

Although COVID-19 can be extremely serious and lead to death, many people who contract COVID-19 never have any symptoms and do not require medical treatment.  The fact that various prison officials knew that Bird had COVID-19 does not demonstrate they knew he had a serious medical need and were deliberately indifferent to that need.  Thus, the allegations in the complaint do not support a claim of deliberate indifference to a serious medical need based on the initial failure to provide Bird medical treatment for COVID-19.  I dismiss this claim without prejudice and with leave to amend.

Bird separately alleges that as of the filing of the complaint, January 29, 2021, he was

suffering from a variety of "long-haul symptoms," including brain fog, headaches, and shortness of breath.  However, he does not allege he told anyone that he was suffering from long-haul symptoms.  Thus, even assuming these symptoms constitute a serious medical need, the complaint does not support that any of the defendants was deliberately indifferent to this medical need.  I dismiss Bird's claims based on a failure to treat his long-haul symptoms without prejudice and with leave to amend.

### 2.  Supervisory Liability

A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  There is no respondeat superior liability under [§]1983." *Id*.; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

"A showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement—and the liability—of that supervisor." *Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011).  "Thus, when a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates." *Id*. at 1207.  As such, "a plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her

subordinates." *Id*. "Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

Bird fails to state a colorable supervisory liability claim.  He vaguely alleges that medical care at HDSP is inadequate in general and that there are often delays in medical care.  But Bird does not cite to any specific policy implemented by one of the defendants or explain even generally how any NDOC or HDSP policy was the driving force behind the alleged failure to provide him medical care.  I dismiss Bird's supervisory liability claim without prejudice and with leave to amend.

## C.  Failure to Quarantine Bird

Bird appears to bring claims of both deliberate indifference to unsafe prison conditions and deliberate indifference to a serious medical need based on allegations that the defendants failed to quarantine him after he was diagnosed with COVID-19.  But Bird does not allege any facts that would support that the failure to quarantine him, after he already contracted COVID-19, put him in any danger.  As Bird had already contracted COVID-19, he was no longer in danger of contracting it, and failure to quarantine him did not put him at any further risk.

The complaint also does not include any allegations that would support that the failure to quarantine Bird somehow contributed to the failure to provide him medical care.  Nor does it appear that the two could possibly be related.  Because the failure to quarantine Bird was not done with deliberate indifference to either Bird's safety or his serious medical needs, he cannot state a colorable claim on this basis.  I dismiss any such claim with prejudice, as amendment would be futile.

1      **D.  First Amendment**

2          Bird brings a First Amendment claim based on allegations that the defendants have

3  obstructed the grievance process. ECF No. 11 at 24.  Bird alleges that there have been protracted

4  delays, that he has had no access to the prison law library or proper forms, and that the

5  defendants have routinely gone over the prescribed timelines.  Bird also alleges there have been

6  retaliatory actions.

7          **1.  Obstruction of Grievances**

8          Bird fails to state a colorable First Amendment claim based on the allegation that his

9  grievances were somehow obstructed or delay.  As an initial matter, Bird does not include any

10  specific allegations about how any of the defendants were personally involved in these alleged

11  violations.  Furthermore, a prisoner has no federal constitutional right to an effective grievance

12  procedure. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that a prisoner has no

13  constitutional right to an effective grievance or appeal procedure); *Mann v. Adams*, 855 F.2d

14  639, 640 (9th Cir. 1988) (an inmate has "no legitimate claim of entitlement to a grievance

15  procedure").  As such, Bird cannot state a First Amendment claim on the grounds that he was

16  unable to effectively file grievances.  I dismiss any such claim with prejudice.

17          **2.  Retaliation**

18          Bird also briefly mentions retaliatory actions.  Prisoners have a First Amendment right to

19  file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408

20  F.3d 559, 567 (9th Cir. 2004).  "Without those bedrock constitutional guarantees, inmates would

21  be left with no viable mechanism to remedy prison injustices.  And because purely retaliatory

22  actions taken against a prisoner for having exercised those rights necessarily undermine those

23

protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id*.

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id*. at 567-68.  Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. *Id*. at 568-69.

Bird fails to state a colorable First Amendment retaliation claim.  The complaint does not include any specific allegations about either the retaliation he faced or how any of the defendants was personally involved in the alleged retaliation.  Thus, the complaint fails to state a colorable claim.  I dismiss this claim without prejudice and with leave to amend.

**E.  Intentional Infliction of Emotional Distress**

Bird attempts to bring a claim of intentional infliction of emotional distress under the Eighth Amendment and Nevada Constitution. ECF No. 11 at 25.  However, intentional infliction of emotional distress is state tort claim, not a constitutional claim.  As such, I dismiss Bird's constitutional claims, and I construe the complaint as asserting a state tort claim of intentional infliction of emotional distress.

The State of Nevada has generally waived sovereign immunity for state tort actions in state court. Nev. Rev. Stat. § 41.031(1).  To sue the State of Nevada or a state employee, the plaintiff is required to sue the State or appropriate political subdivision. Nev. Rev. Stat. § 41.031(2) ("In any action against the State of Nevada, the action must be brought in the name

1    of the State of Nevada on relation of the particular department, commission, board or other

2    agency of the State whose actions are the basis for the suit.").

3        In *Craig v. Donnelly*, the Nevada Court of Appeals addressed whether a plaintiff had to

4    name the State as party in a state court case, and held that "while a plaintiff must name the State

5    as a party to any state tort claims in order to comply with NRS 41.031 and NRS 41.0337, this

6    statutory requirement does not apply to 42 U.S.C. § 1983 claims, even when brought in the same

7    complaint as a plaintiff's state tort claims. 439 P.3d 413 (Nev. App. 2019).  "Indeed, the State

8    cannot be named as a party to a plaintiff's § 1983 civil rights claims." *Id.* at 414.

9        With respect to federal court cases, the State of Nevada does not waive its sovereign

10   immunity. Nev. Rev. Stat. § 41.031(3).  Generally, the State of Nevada and arms of the state

11   cannot be sued in federal court. *See O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982)

12   (holding that "Nevada has explicitly refused to waive its immunity to suit under the eleventh

13   amendment . . . . The Supreme Court has made it clear that section 1983 does not constitute an

14   abrogation of the eleventh amendment immunity of the states").  In *Stanley v. Trustees of*

15   *California State Univ.*, 433 F.3d 1129 (9th Cir. 2006), the Ninth Circuit held that 28 U.S.C.

16   § 1367 does not abrogate state sovereign immunity for supplemental state law claims. *Id.* at

17   1133-34.  Although the State of Nevada may consent to federal court jurisdiction for state law

18   claims through removal, this is not a removed case. *See Lapides v. Bd. of Univ. Sys. Of Ga.*, 535

19   U.S. 613 (2002) (holding that state's removal of suit to federal court constitutes waiver of its

20   sovereign immunity).

21       Bird must raise any state law tort claim in state court, so I dismiss this claim without

22   prejudice. *See Hirst v. Gertzen*, 676 F.2d 1252, 1264 (9th Cir. 1982) (holding that, where

23   Montana law deemed governmental entities indispensable parties in a state tort claim against a

1  state employee, the federal court had no supplemental jurisdiction over the state tort claim if it

2  had no jurisdiction over the indispensable party).

3  **III.     LEAVE TO AMEND**

4         I grant Bird leave to file an amended complaint to cure the deficiencies outlined in this

5  order.  If he chooses to file an amended complaint, he is advised that an amended complaint

6  supersedes (replaces) the original complaint and, thus, the amended complaint must be complete

7  in itself. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th

8  Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant;

9  an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896,

10 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required

11 to reallege such claims in a subsequent amended complaint to preserve them for appeal).  Bird's

12 amended complaint must contain all claims, defendants, and factual allegations that he wishes to

13 pursue in this lawsuit.  Bird should file the amended complaint on this court's approved prisoner

14 civil rights form, and it must be entitled "First Amended Complaint."

15        If Bird chooses to file an amended complaint curing the deficiencies outlined in this

16 order, he will file it **by October 15, 2021**.  If he chooses not to file an amended complaint, this

17 action will proceed on Bird's colorable claims as outlined in this order.

18        I remind Bird that a basic lawsuit is a single claim against a single defendant.  Rule 18(a)

19 allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant.

20 Rule 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief

21 arises out of the same "transaction, occurrence, or series of transactions" and "any question of

22 law or fact common to all defendants will arise in the action."  **However, unrelated claims that**

23 **involve different defendants must be brought in separate lawsuits**. *See George v. Smith*, 507

1  F.3d 605, 607 (7th Cir. 2007) (holding that "[a] buckshot complaint that would be rejected if

2  filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C

3  punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—

4  should be rejected if filed by a prisoner").  These rules are not only intended to avoid confusion

5  that arises out of bloated lawsuits, but also to ensure that inmates pay the required filing fees for

6  their lawsuits and prevent inmates from circumventing the three strikes rule under the Prison

7  Litigation Reform Act. 28 U.S.C. § 1915(g).

8          Based on the complaint, it is not clear whether Bird's claims regarding his medical care

9  and any First Amendment retaliation claim are properly joined to his claims of deliberate

10 indifference to a serious medical need.  If Bird chooses to bring claims of deliberate indifference

11 to a serious medical need or a First Amendment retaliation claim in any amended complaint, he

12 must ensure that joinder of the claims is permitted by either Rule 18 or Rule 20.  Bird may state a

13 single claim against a single defendant.  He may then add any additional claims to his action that

14 are against the same defendant under Rule 18.  He may also add any additional claims against

15 other defendants **if those claims arise from the same transaction, occurrence, or series of**

16 **transactions as his original claim**. Fed. R. Civ. P. 20(a)(2).  Any attempt to join claims that are

17 not permitted by the Federal Rules of Civil Procedure will result in those claims being dismissed

18 as improperly joined.

19         Claims may not be joined merely because they occurred in the same prison, the violators

20 had the same supervisor, or the claims are based on the same type of constitutional violation.

21 Bird may not evade these requirements merely by alleging that he told the same person about

22 them or by making conclusory allegations that all the defendants are engaging in a conspiracy or

23

1  campaign of harassment.  He also may not evade these requirements by including multiple

2  causes of action in a part of the complaint form reserved for one claim.

3  **IV.     BIRD'S MOTIONS**

4          **A.  ECF Nos. 4, 5, 9, 10**

5          Bird filed four identical motions for preliminary injunction and temporary restraining

6  order. ECF Nos. 4, 5, 9, 10.  Injunctive relief, whether temporary or permanent, is an

7  "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense Council*, 555

8  U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to

9  succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

10  relief, that the balance of equities tips in his favor, and that an injunction is in the public

11  interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009)

12  (quoting *Winter*, 555 U.S. at 20).  Furthermore, under the PLRA, preliminary injunctive relief

13  must be "narrowly drawn," must "extend no further than necessary to correct the harm," and

14  must be "the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

15          "A court's equitable power lies only over the merits of the case or controversy before it.

16  When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does

17  not have the authority to issue an injunction." *Pac. Radiation Oncology, LLC v. Queen's Med.*

18  *Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015).

19          In these motions, Bird requests that all inmates be confined to their cells without work

20  until such time as all inmates have received COVID-19 vaccinations.  Based on the allegations in

21  the complaint, Bird has already been diagnosed with COVID-19.  None of the allegations in the

22  complaint or the motions supports that Bird is likely to suffer irreparable harm if inmates are not

23  confined to their cells.  As such, I deny the motions for preliminary injunction and temporary

1 | restraining order.

2 |      **B. ECF Nos. 15, 16**

3 |      Bird also filed two identical motions for a preliminary injunction and temporary

4 | restraining order in which he alleges that he has faced retaliation based on his filing of this case.

5 | ECF Nos. 15, 16.  He alleges that on February 16, 2021, the day that the defendants' response to

6 | his initial motions for preliminary injunction were due, Bird received a notice of charges. *Id.* at 2.

7 | He also alleges that he has faced other consequences as a result of initiating this case, including

8 | losing his prison job and being moved to a less desirable unit.

9 |      As an initial matter, I note for Bird's benefit that this case has been at a prescreening

10 | stage.  The defendants have not been served with any of Bird's filings.  The court filing system

11 | generates an automatic response date when a motion is filed, but because the defendants have not

12 | been served with Bird's motions, no response due on February 16, 2021.

13 |      As to the substance of Bird's motion, his allegations are about retaliation that took place

14 | after the complaint was filed.  As such, he is seeking injunctive relief based on claims not pled in

15 | the complaint.  I do not have the authority to issue an injunction based on claims that are not pled

16 | in the complaint. *See Pac. Radiation Oncology,* 810 F.3d at 633.  Accordingly, I deny Bird's

17 | motions for preliminary injunction and temporary restraining order.

18 | **V.      CONCLUSION**

19 |      I therefore order that I accept the complaint filed at ECF No. 11 as the operative

20 | complaint in this case.  The Clerk of the Court will send Bird a courtesy copy of the complaint.

21 |      I further order that Bird's claim under the Eighth Amendment and Article 1, Section 6, of

22 | the Nevada Constitution of deliberate indifference to unsafe prison conditions based on a lack of

23 | sanitation during the COVID-19 outbreak will proceed against Monique Hubbard-Pickett,

20

1   Jeremy Bean, Piccinini, Clayton, Fontes, Corey, Ortiz, Ashcraft, Brightwell, Flynn, Simpson,

2   Alverez, Barth, and Johnson.

3        I further order that Bird's claim under the Eighth Amendment and Article 1, Section 6, of

4   the Nevada Constitution of deliberate indifference to unsafe prison conditions based on a failure

5   to follow safety protocols, such as wearing masks, will proceed against Clayton, Fontes, Corey,

6   Ortiz.

7        I further order that, to the extent that Bird is attempting to bring a claim under the Eighth

8   Amendment and Article 1, Section 6, of the Nevada Constitution of deliberate indifference to

9   unsafe prison conditions based on a failure to quarantine him, I dismiss that claim with prejudice

10  as amendment would be futile.

11       I further order that Bird's claim under the Eighth Amendment and Article 1, Section 6, of

12  the Nevada Constitution for deliberate indifference to a serious medical need based on the

13  defendants' personal knowledge of his medical needs is dismissed without prejudice and with

14  leave to amend.

15       I further order that Bird's claim under the Eighth Amendment and Article 1, Section 6, of

16  the Nevada Constitution for deliberate indifference to a serious medical need based on

17  supervisory liability is dismissed without prejudice and with leave to amend.

18       I further order that, to the extent that Bird is attempting to bring a claim under the Eighth

19  Amendment and Article 1, Section 6, of the Nevada Constitution of deliberate indifference to a

20  serious medical need based on a failure to quarantine him, I dismiss that claim with prejudice as

21  amendment would be futile.

22       I further order that Bird's claim under the First Amendment and Article 1, Section 9, of

23  the Nevada Constitution based on difficulties with filing grievances is dismissed with prejudice

1  as amendment would be futile.

2      I further order that Bird's claim under the First Amendment and Article 1, Section 9, of

3  the Nevada Constitution based on allegations of retaliation is dismissed without prejudice and

4  with leave to amend.

5      I further order that Bird's claim of intentional infliction of emotional distress under the

6  Eighth Amendment and the Nevada Constitution is dismissed with prejudice as amendment

7  would be futile.  I construe the complaint as bringing a state court tort claim of intentional

8  infliction of emotional distress.  I dismiss this claim without prejudice but without leave to

9  amend as this claim must be brought in state court.

10      I further order that defendants Daniels, Harold Wickham, Sgt Ontiveras, S. Barrett,

11  Prentice, Norrham, Greg Bryan, Michael Minev, B. Guiterrez, J. Cabrera, G. Martin, and J.

12  Corruledo are dismissed form the entirety of the case without prejudice.

13      I further order that Bird's motions for a temporary restraining order or preliminary

14  injunction **(ECF Nos. 4, 5, 8, 9, 15, 16) are denied**.

15      I further ordered that if Bird chooses to file an amended complaint curing the deficiencies

16  of his complaint as outlined in this order, he will file the amended complaint **by October 15,**

17  **2021**.

18      I further order the Clerk of the Court to send to Bird the approved form for filing a

19  § 1983 complaint and instructions for the same.  If Bird chooses to file an amended complaint,

20  he should use the approved form and he will write the words "First Amended" above the words

21  "Civil Rights Complaint" in the caption.  I notify Bird that, if he chooses to file an amended

22  complaint, I will screen the amended complaint in a separate screening order.  The screening

23  process will take several months.

I further order that, if Bird chooses not to file an amended complaint, this case will proceed on Bird's colorable claims as discussed in this order.

DATED THIS 10th day of September 2021.

_____
UNITED STATES DISTRICT JUDGE